# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAYLOR EMERICK, an individual,<br><br>Plaintiff,<br><br>v.<br><br>REGUS MANAGEMENT GROUP, LLC, a Delaware corporation, and DOES 1 through 25, inclusive,<br><br>Defendants. | CASE NO.: 3:18-cv-1576-GPC-LL<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**[ECF No. 42]** |

Before the Court is Defendant Regus Management Group, LLC's ("Defendant" or "Regus"), Motion for Summary Judgment. ECF No. 42. Plaintiff Taylor Emerick, f/k/a Taylor Warfield filed an opposition on November 29, 2019. ECF No. 45. Defendant filed a reply on December 13, 2019. ECF No. 47. Based on review of the factual record, the Court hereby **DENIES** Defendant's motion for summary judgment.

## BACKGROUND

Defendant is a provider of "flexible workplace solutions" with multiple locations in San Diego. ECF No. 35 ("First Amended Complaint" or "FAC") ¶¶ 11, 12. Plaintiff began working for Defendant in May 2015. ECF No. 45-1 (Statement of Disputed and

Undisputed Facts, "SOF") ¶ 1.[1] Plaintiff first worked as a Senior Customer Service Representative, then as a Community Manager at Defendant's University Town Center ("UTC") location. FAC ¶ 12. Starting in November 2016, Plaintiff began experiencing health issues due to her celiac disease and food allergies, which interfered with her ability to work. SOF ¶ 2. In early December 2016, Plaintiff submitted a request for medical leave. SOF ¶¶ 2-3. Plaintiff took medical leave beginning on December 2, 2016. *Id.* ¶ 3. Defendant terminated Plaintiff on January 31, 2017. *Id.* ¶ 18; ECF No. 42-11 at 17 ("Termination Letter").

Plaintiff alleges that she was wrongfully terminated by Defendant, and brings claims under Cal. Gov't Code § 12945.2 (the "California Family Rights Act" or "CFRA"), California Business & Professions Code §§ 17200 *et seq.*, and California laws governing public policy, including the CFRA and 2 Cal.C.Regs. §§ 11089(a), (d).

The salient issue presented by the instant motion is whether Plaintiff attempted to return to work after the term of her continuous medical leave ended. Defendant argues that Plaintiff took multiple days of unexcused absences which led to her termination, and Plaintiff counters that she made numerous attempts to return to work and Defendant deliberately ignored her efforts.

The following sets out the relevant timeline and actions that relate to this dispute:

**December 2, 2016 – January 22, 2017**

Plaintiff submitted a request for medical leave in early December 2016, and Defendant, through its vendor Principal Absence Management Center ("Principal") approved Plaintiff for continuous leave periods, starting on December 2, 2016. SOF ¶ 3. Plaintiff was on approved continuous leave beginning December 2, 2016 and ending on January 22, 2017. *Id.* The "applicable leave plan" for all of the continuous leave of absence periods was the CFRA. ECF No. 42-10 at 7-8.

---

[1] The Court references the undisputed facts in this Statement of Facts, unless otherwise noted.

At the time her medical leave began, Plaintiff was assigned to work at Defendant's UTC location. SOF ¶ 3. On occasion, Plaintiff also worked at Defendant's other nearby offices, located in La Jolla Village and Sunroad, in order to provide coverage for other employees. *Id.* Plaintiff worked at the La Jolla Village office "quite frequently." ECF No. 45-2 at 13. Plaintiff's normal working hours were 8:15 a.m. through 5:00 p.m., Monday through Friday. SOF ¶ 7. The business hours of Defendant's centers are 8:30 a.m. through 5:00 p.m., Monday through Friday. *Id.*

Plaintiff's supervisor was the Area Manager Leonard "CJ" Sinnisgalli ("Sinnisgalli"). SOF ¶ 2. On or around January 10, 2017, while Plaintiff was out on medical leave, Plaintiff called and texted Sinnisgalli. ECF No. 46 (Declaration of Taylor Emerick, "Emerick Decl.") ¶ 4; ECF No. 45-2 at 47. On January 10, Sinisgalli emailed Jennifer Baines, the Human Resources Manager, "Taylor called and text [sic] me again last night. I did not respond as instructed, but her text read 'I will call HR tomorrow and chat about what I just heard back from my Doctor.'" ECF No. 45-2 at 47.

On January 11, 2017, Plaintiff emailed Jennifer Baines, the Human Resources Manager, stating that she would "like to get in contact regarding returning to work. I have doctor's clearance that has been faxed in, so I wanted to schedule returning to work next Tuesday." ECF No. 45-2 at 49. Plaintiff identified herself in her email to Baines as "Taylor Warfield and I work at the UTC location in San Diego." *Id.* On January 12, 2017, Benefits Coordinator Rachel Patt replied to Plaintiff's email stating that they had not received a clearance from Plaintiff's doctor and asked Plaintiff to fax or email it to Patt's attention, not to Plaintiff's center. ECF No. 45-2 at 51. Patt notes at the end of the email, "Again, please be sure to fax the note to the number below or email it to my attention." *Id.*

**January 25, 2017 (Wednesday)**

Plaintiff's doctor approved Plaintiff to return to work starting Monday, January 23, 2017. SOF ¶ 4; ECF No. 42-10 at 6.

On January 25, 2017, Patt emailed Plaintiff: "You advised [sic] that you would be returning to work on tomorrow [sic]. I have advised your manager and HR manager to expect you tomorrow." ECF No. 42-11 at 16. Plaintiff and Patt agreed that Plaintiff would be in the following day, January 26, 2017. SOF ¶ 5. Defendant asserts Plaintiff agreed to come back to work on January 26. However, Plaintiff claims that the agreed-upon plan was that Plaintiff would meet with Sinisgalli on January 26, not necessarily to return to work.

In an email time stamped 9:27 a.m., Patt emailed Sinisgalli stating that she "just spoke" with Plaintiff, and that "[s]he has to come through HR! She said she has a return to work note, but was waiting to hear from us. She advised that she will be in on tomorrow [sic]." ECF No. 45-2 at 55. On January 25, in an email time stamped 11:23 a.m., Sinisgalli emailed Patt, "Taylor called me again this morning (I missed the call). Has she been cleared or does she still need to go through HR?" ECF No. 45-2 at 57. In an email time stamped 11:50 a.m., Sinisgalli writes to Patt, "If Taylor can in fact return tomorrow, I would like her to set a meeting with her [sic] before attempting to ramp back up into any operations . . . If she is returning can you please help coordinate this first meeting to start her first day back." ECF No. 45-2 at 59.

Plaintiff alleges that she contacted Sinisgalli on January 25, 2017 and Sinisgalli did not return her call. ECF No. 45-1 (Plaintiff's Response to SOF, "SOF Response") ¶ 5.2.

**January 26, 2017 (Thursday)**

At 6:50 a.m. on January 26, Sinisgalli texted Plaintiff, "Hey, I never heard from Rachel yesterday. Are you actually cleared? If so, take your time – we will start off by meeting at 10:30 LJV today." SOF ¶ 6. Parties agree that "LJV" refers to Defendant's La Jolla Village location. *Id.*

At 8:33 a.m., Sinisgalli emailed Patt asking, "Rachel is Taylor cleared for today?" ECF No. 42-11 at 11. At 9:08 a.m., Patt replied that Plaintiff "is supposed to return from work today. I am working on getting her release from her doctor. If Taylor does shoe

[sic] up today, I would urge you to contact Jennifer Baines before you have a discussion with Taylor." *Id.*

At 10:00 a.m. on January 26, Sinisgalli texted Plaintiff, "Please contact HR." In the FAC, Plaintiff alleges that Sinisgalli canceled their scheduled 10:30 a.m. meeting, through a text message, "[a]bout thirty minutes before their scheduled" meeting time. FAC ¶ 14. In the SOF Response and in Plaintiff's Declaration, Plaintiff only states that Sinisgalli cancelled the meeting, but does not specify the method of communication. SOF Response ¶ 5.9; Emerick Decl. ¶ 9. Defendant disputes that Sinisgalli ever canceled the meeting. SOF ¶ 11.[2]

On January 26, Patt emailed Plaintiff: "[Y]ou confirmed that you would be at work this morning. Would you please contact me at your earliest convenience? If you cannot reach me by phone, please respond to this email . . . Please reach out to me directly moving forward, we will keep management updated." ECF No. 42-11 at 15. In this same email, Patt either stated that Plaintiff was out on either "approved" or "unapproved" leave.[3] Plaintiff replied, "My manager made an appointment to meet this morning, but canceled it before the time." ECF No. 45-2 at 65.

At 2:07 p.m., Plaintiff texted Sinisgalli: "CJ this is crazy, HR has all my paperwork, they've had it for 2 weeks I'm going to have to start looking for a new job." SOF ¶ 12; ECF 42-10 at 12.

At 7:10 p.m., Patt emailed Plaintiff:

Taylor, you still need to return to work per your doctor's note and our conversation below. If your manager cancelled a meeting, that is not an indication that you should not return to work. Once again, please be sure to report to work on 01/27/2017. I called twice today and I left you a message. HR Manager, Jennifer Baines has also reached out to you and left you a message asking you return her

---

[2] In Sinisgalli's deposition, he stated, "I don't think I canceled the meeting." ECF No. 45-2 at 35.
[3] In the version of this email time stamped 10:50 a.m. (ECF No. 42-11 at 15) Platt writes that Plaintiff is out on "unapproved leave." An identical version of this email appears again in records produced attached to Plaintiff's Opposition. ECF No. 45-2 at 65. However, in another version of this email that appears on ECF No. 45-2 at 67, the email is time stamped 12:51 p.m. and states, "At this point, you are out on an approved leave." Everything else in this email is identical to the other two versions. Plaintiff refers to the latter version (i.e., ECF No. 45-2 at 67) in her Declaration (Emerick Decl. ¶ 10) and in her opposition (ECF No. 45 at 9).

call. We look forward to seeing you at work on tomorrow [sic]. Thank you and please call me if you have any questions at 214-295-3723 or 214-517-9547.

ECF No. 42-11 at 13-14. Plaintiff does not allege that she ever replied to Patt's email.

At 7:14 p.m., Patt emailed Baines stating that Plaintiff said that she did not return to work today "because [Sinisgalli] cancelled a meeting her [sic]." ECF No. 47-4 at 12. Patt states, "I have been in touch with CJ and that is not what he is indicating. We have reached out to Taylor several times asking her to return to work. She is currently out on unapproved leave." *Id.*

**January 27, 2017 (Friday)**

Plaintiff did not appear at any of Defendant's locations on Friday. Plaintiff does not allege that she emailed or called anyone at Regus on January 27.

Plaintiff alleges that Sinisgalli had not responded to her text message, and as of January 27, she had "received no word from Regus as to how or where I was to return to work." Emerick Decl. ¶ 13.

**January 28, 2017 (Saturday)**

Baines emailed Sinisgalli informing him that Baines had "contacted the center and learned that [Plaintiff] did not show up Friday. We are going to follow the no call/no show process with Taylor. We sent her a letter on Friday and will terminate her employment Tuesday after the 3rd day of not hearing from her." ECF No. 45-2 at 73.

**January 29, 2017 (Sunday)**

On January 29, Plaintiff texted Sinisgalli, "What location are you going to be at tomorrow morning, I wanna come chat with you real quick." ECF No. 45-2 at 76. Sinisgalli informed Baines that Plaintiff had contacted him, noting that he "have not/will not reply." ECF No. 45-2 at 75. Baines replied to Sinisgalli, "Thanks CJ. Please don't respond." *Id.*

**January 30, 2017 (Monday)**

Parties agree that Plaintiff did not report for work any of the Defendant office locations on January 30.

Plaintiff alleges that she called Sinisgalli on January 30 and has submitted a phone record which she alleges shows a record of her call to Sinisgalli on January 30; the time of the call is listed as 17:47:07 (UTC).[4] ECF No. 45-2 at 78 ("AT&T Phone Record"). Plaintiff additionally alleges that she called Regus offices looking for Sinisgalli on January 30, "but was told he was busy, and my message would be relayed. Again no one returned my calls." Emerick Decl. ¶ 15. Plaintiff does not allege that she reached out to Platt, Baines, or anyone else from Defendant's HR department on January 30.

**January 31, 2017 (Tuesday)**

Defendant alleges that Plaintiff did not report for work on January 31, 2017 or notify Defendant that she would not report for work that day. SOF ¶ 16. It is undisputed that Plaintiff did not report for work at any of Defendant's office locations on January 31. Plaintiff disputes Defendant's contention that Plaintiff did not report for work on January 31 and references her attempts to call Defendant's offices looking for Sinisgalli "on a few occasions." SOF Response ¶ 16.1 (citing Emerick Decl. ¶ 15). However, in her Declaration, Plaintiff only alleges that she called Regus offices looking for Sinisgalli on January 30, not January 31.

Defendant terminated Plaintiff on January 31 by sending her a letter. ECF No. 45-2 at 82. The letter states, "We received notification that you were to return to work on January 23, 2017. Since then, we have contacted you several times via phone and email asking that you return to work. In addition, you have not called in or showed up to work for three (3) consecutive days." ECF No. 42-11 at 17. The letter notes that Plaintiff's employment with Defendant will terminate on January 31, 2017 "for failure to return from leave and violation of Regus attendance policy." *Id.*

On January 31, Sinisgalli sent Baines an email stating that Plaintiff is "not here again. This has to be it right? Also looks like she's been working since December already. One of my other CM's who is frustrated with all the schedule covering she has

---

[4] UTC is an abbreviation for Coordinated Universal Time, which is 8 hours ahead of Pacific Time. 17:47 (UTC) on January 30, 2017 would have been 9:47 a.m. (PST) on January 30, 2017.

been doing in Taylor's absence sent me this picture." ECF No. 45-2 at 84. Sinisgalli's email included a screenshot of a Facebook post, which appears to show Plaintiff's update of her profile picture with a photograph with the caption: "Me sewing pieces between scenes for fashion film . . . Special thank you to Sonya Berg for allowing me to be part of her stylist team for this film!" Plaintiff states that she was never financially compensated by Sonya Berg while she was on medical leave, and this photograph shows her "helping a friend sew a costume for a project." Emerick Decl. ¶ 18.

On January 31, Plaintiff texted Sinisgalli, "It saddens me my time at Regus ended this way. It would have been nice if you would have ever returned my calls/messages." ECF No. 45-4 at 90.

### 1. Defendant's Policy

The parties agree that Defendant's Job Attendance & Punctuality Policy in effect at the time Plaintiff was terminated provides, in relevant part:

**7:7 No Call/No Show**

Failing to follow the proper notification process and call in at least one (1) hour prior to the start of a scheduled shift, or as soon as practicable for an unforeseeable medical absence, is a no-call/no-show. This can be a serious matter as it can create increased administrative and work burdens on other Team Members. The first instance of a no-call/no-show may result in a Step 3 Performance Improvement Plan (PIP). The second separate offense may result in termination of employment with no additional disciplinary steps. If the Team Member's attendance/punctuality has already been addressed through the PIP process when a no-call/ no-show occurs, the disciplinary process may be accelerated to termination of employment. Extenuating circumstances may be considered when determining discipline for a no-call/no-show (for instance, if the Team Member is in a serious accident and is hospitalized) the Company will exercise discretion in such cases.

**7:8 Job Abandonment**

Any no-call/no-show (as defined above) is considered a voluntary resignation due to job abandonment as of the third (3rd) consecutively scheduled missed work shift and may result in the immediate termination of employment.

**7:9 Notifying Your Supervisor of Tardiness or Absence**

All Team Members are required to call in at least one (1) hour prior to the start of a scheduled shift, or as soon as practicable for an unforeseeable medical absence. Failure to notify your supervisor, will result in the absence being considered a No Call/No Show and may result in disciplinary action up to and including termination.

If you are going to be late for work or absent:
- You are required to speak with your Supervisor directly.
- You must notify your Supervisor or designee of the expected length of absence.
- You must notify your Supervisor on each day of the expected absence, unless you have notified them of the expected length of absence on the first day.
- If your expected return date changes, you must notify your supervisor if you will not return as originally communicated.
- You must speak with another Supervisor if your Supervisor is unavailable.
- If you are unable to reach your Supervisor directly and have to leave a message, you must include a call back number where your Supervisor can reach you.

It is NOT acceptable to:
- Leave a message at the switchboard
- Leave a message with a co-worker
- Text or email your message
- Have someone else call in on your behalf unless you are physically unable to contact your supervisor (i.e. in the hospital, etc.)

The Company reserves the right to omit or repeat any steps in the disciplinary process as appropriate. It is important to understand that individual circumstances may dictate that fewer tardies or absences than listed above may still be considered Excessive or Pattern Absenteeism. Following proper call-in or notification process may not excuse the absence or tardy. Managers should work with the Human Resources Department to implement steps of the disciplinary process based on the specifics of the situation, such as frequency, extenuating circumstances, etc. The Company reserves the right to require medical certification from the Team Member's physician for all absences of three (3) days or more. All medical documentation should be sent directly to the HR Department by the Team Member. This policy will be applied consistent with all applicable state and federal laws.

ECF No. 42-11 at 9 ("Attendance Policy").

///

///

## LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 56 empowers the Court to enter summary judgment on factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 327 (1986); Fed. R. Civ. P. 56. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material when it affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex*, 477 U.S. at 323. The moving party can satisfy this burden by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element of his or her claim on which that party will bear the burden of proof at trial. *Id.* at 322–24. If the moving party fails to bear the initial burden, summary judgment must be denied and the Court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970). Once the moving party has satisfied this burden, the nonmoving party cannot rest on the mere allegations or denials of his or her pleading, but must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (citing Rule 56). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). In making this determination, the Court must "view [] the evidence in the light most favorable to the nonmoving party." *Fontana v. Haskin*, 262 F.3d 871, 876 (9th Cir. 2001). The Court does not engage in credibility determinations, weighing of evidence, or drawing of legitimate inferences from the facts; these functions

are for the trier of fact. *Anderson*, 477 U.S. at 255.

**DISCUSSION**

Plaintiff alleges (1) a violation of the California Family Rights Act, Cal Gov't Code § 12945.2 ("CFRA"); (2) retaliation in violation of the CFRA; (3) wrongful termination in violation of public policy; and (4) unfair business practice in violation of Cal. Bus. & Prof. Code § 17200 ("Section 17200"). Plaintiff seeks damages, attorney's fees, and injunctive and declaratory relief.

### 1. CFRA Interference and Retaliation Claims

The CFRA is a portion of the California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.) that provides protections to employees needing family leave or medical leave. Under the CFRA, it is unlawful for an employer to refuse to grant an employee's request for up to a total of twelve work weeks of leave for family care or medical reasons.[5] Cal. Gov't Code § 12945.2(a). The CFRA further guarantees that an employee will be reinstated to the "same or a comparable position upon the termination of the leave." *Id.* Ultimately, the purpose of the CFRA "to give employees an opportunity to take leave from work for certain personal or family medical reasons without jeopardizing job security." *Moore v. Regents of Univ. of California*, 248 Cal. App. 4th 216, 233 (2016). Since the CFRA adopts the same language as the analogous federal statute, the Family and Medical Leave Act of 1993 ("FMLA"), California state courts have held that the same standards apply. *See Lew v. Superior Court Of Cal.*, 348 F. App'x 227, 229 (9th Cir. 2009); *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1132, n.4 (9th Cir. 2003).

"Violations of the CFRA generally fall into two types of claims: (1) 'interference' claims in which an employee alleges that an employer denied or interfered with her substantive rights to protected medical leave, and (2) 'retaliation' claims in which an employee alleges that she suffered an adverse employment action for exercising her right

---

[5] In order to qualify, the employee must have had worked for the employer for more than 12 months and must have worked at least 1,250 hours during the previous 12-month period.

11

3:18-cv-01576-GPC-LL

to CFRA leave." *Rogers v. Cty. of Los Angeles*, 198 Cal.App.4th 480, 487-88 (2011). Plaintiff alleges both interference and retaliation claims. The Court addresses each in turn.

### a. Interference Claim

In order to succeed on an interference claim, the employee must prove: "(1) the employee's entitlement to CFRA leave rights; and (2) the employer's interference with or denial of those rights." *Williams v. United Parcel Serv., Inc.*, No. CV 17-6773-PLA, 2018 WL 6136824, at *6 (C.D. Cal. Sept. 4, 2018). The employee need only prove by "by a preponderance of evidence" that her decision to take leave "constituted a negative factor in the decision to terminate her" in order for the employee to succeed on the interference claim. *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1135-1136 (9th Cir. 2003) (citations omitted). The employee can prove this claim by using either direct or circumstantial evidence, or both. *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1125 (9th Cir. 2001).

On the first prong, Plaintiff was entitled to CFRA leave rights since she met the qualifying requirements – namely, she worked for Defendant for more than 12 months and had worked at least 1,250 hours during the 12-month period leading up to her request to take leave. FAC ¶ 18.

On the second prong, Plaintiff argues that Defendant interfered with her rights under the CFRA by preventing her from returning to work, due to Defendant's refusal to interact with her. Plaintiff alleges that she could not return to work without notification of a time and location to return. SOF Response ¶ 5.5. Defendant counters that the absences that resulted in Plaintiff's termination were not covered by the CFRA and Plaintiff was instead terminated due to her violation of the Attendance Policy. Defendant also contends that Plaintiff knew where and when to report to work and further, Plaintiff could have but failed to ask Defendant's HR personnel for guidance regarding her work schedule and work location.

///

### i. The events of Thursday, January 26 raise an issue of material fact.

Defendant alleges that it did not interfere with Plaintiff's CFRA rights or retaliate against her exercise of those rights because it terminated Plaintiff based upon legitimate, non-retaliatory reasons. Defendant relies on Plaintiff's failure to report for her regularly-scheduled work shift on January 26, 27, and 30 as justifying termination under the Job Abandonment provisions of the Attendance Policy in effect. ECF No. 42-2 at 9-10. Plaintiff responds that she attempted to meet with her supervisor, Sinisgalli, on January 26 to discuss her return but Sinisgalli cancelled the meeting and that she attempted to reach Sinisgalli thereafter but was unable to reach him. ECF No. 45 at 15-16. Further, Plaintiff asserts that the Attendance Policy permitted her to communicate with Sinisgalli instead of Defendant's HR Department because she had been cleared to return to work. Based upon its review of the record, the Court finds that there are numerous genuine issues of fact which must be settled by the trier of fact at trial.

As a starting point, there is no question that Defendant's employees insistently directed Plaintiff to contact HR personnel to discuss and arrange her return to work. Meanwhile, Plaintiff doggedly avoided contacting HR and persistently reached out to her supervisor. The ultimate questions are whether Plaintiff and Defendant's actions reveal an attempt to comply with or ignore the Attendance Policy.

The Attendance Policy specifically directs employees to communicate with their Supervisor directly or with another Supervisor if their Supervisor is unavailable. The only reference in the Attendance Policy to an employee's communications with the HR Department is the directive for employees to send medical documentation to the HR Department. Attendance Policy 7:9. Per the Attendance Policy, if an employee fails to call in at least one hour prior to the start of a scheduled shift, "or as soon as practicable for an unforeseeable medical absence," the absence is considered a "No Call/No Show" absence. Attendance Policy 7:7. In order to avoid incurring a "No Call/No Show" absence, employees are required to "speak with your Supervisor directly" to let them know of the absence at least one hour prior to the start of a scheduled shift. Attendance

Policy 7:9. The Attendance Policy also requires employees to "speak with another Supervisor if your Supervisor is unavailable." *Id.* If an employee is "unable to reach your Supervisor directly and have to leave a message, you must include a call back number where your Supervisor can reach you." *Id.*

It is undisputed that Plaintiff was cleared for work no later than January 25, 2017. SOF ¶ 5. Once she was cleared by HR, it was acceptable for Plaintiff to call her supervisor. SOF Response ¶¶ 5.11, 17. On January 25, 2017, Patt emailed Plaintiff: "You advised [sic] that you would be returning to work on tomorrow [sic]. I have advised your manager and HR manager to expect you tomorrow." ECF No. 42-11 at 16. Plaintiff and Patt agreed that Plaintiff would "be in" on the following day, January 26, 2017. SOF ¶ 5. Plaintiff testified that she arranged to come in and meet with Sinisgalli, her supervisor, on January 26, 2017 at 10:30 a.m. Emerick Decl. ¶ 8. Plaintiff contends that Sinisgalli himself only expected Plaintiff for a "return-to-work" meeting. SOF Response ¶¶ 5.7, 13.2. Plaintiff testified that Sinisgalli canceled the 10:30 a.m. meeting. SOF Response ¶ 5.9; Emerick Decl. ¶ 9. Plaintiff emailed Patt, informing Patt that Sinisgalli had made an appointment to meet Plaintiff that morning but canceled it. ECF No. 45-2 at 65. For his part, Sinisgalli only equivocally denies that he canceled the meeting. SOF ¶ 11.[6] However, the Court notes Sinisgalli texted Plaintiff, at 10:00 a.m., "Please contact HR." ECF No. 42-10 at 12. Ultimately, there remains a genuine issue of fact as to whether Plaintiff properly informed Sinisgalli that she would not be coming in to work that day or was otherwise excused from doing so based upon the alleged cancellation of the 10:30 a.m. meeting.

On January 27, Patt replied, "[I]f your manager cancelled a meeting, that is not an indication that you should not return to work. Once again, please be sure to report to work on 01/27/2017." ECF No. 42-11 at 14. It is undisputed that Plaintiff failed to report to work or to call in to report an absence on January 27. Based on the record,

---

[6] In Sinisgalli's deposition, he stated, "I don't think I canceled the meeting." ECF No. 45-2 at 35.

1 Plaintiff failed to make any attempts to call either Sinisgalli or anyone else at Defendant's offices to inform them of her January 27 absence from work.

Next, on January 29, Plaintiff texted Sinisgalli, "What location are you going to be at tomorrow morning, I wanna come chat with you real quick." ECF No. 45-2 at 76. Sinisgalli informed Baines that Plaintiff had contacted him, noting that "I have not/will not reply." ECF No. 45-2 at 75. Baines replied to Sinisgalli, "Thanks CJ. Please don't respond." *Id.* Plaintiff further declares that she called Sinisgalli on his cell phone on January 30 and contacted other Regus offices looking for Sinisgalli. SOF Response ¶ 19.3; Emerick Decl. ¶ 15.

Here, by requiring Plaintiff to communicate solely with HR Department personnel, Defendant's employees required Plaintiff to depart from the Attendance Policy. What is not clear is whether the decision to direct Sinisgalli to ignore Plaintiff's communications and to direct Plaintiff to contact HR personnel is compliant with the Defendant's Attendance Policy, or whether this constitutes an unreasonable refusal to communicate with Plaintiff. Thus, there remain triable issues of fact regarding Defendant's motivation in directing Sinisgalli to refrain from communicating with Plaintiff.

"The fact that the parties dispute a number of factual issues, including . . . whether [the employer] did or did not follow Defendant's own policies for laying off employees . . . demonstrates why this case is not an appropriate one for summary judgment and instead, should be heard by a jury." *Moore v. Regents of Univ. of California*, 248 Cal. App. 4th 216, 241 (2016). Further, a defendant's departure from its normal procedures might "afford evidence that improper purposes played a role in an employee's termination." *See Moore*, 248 Cal. App. 4th at 239 (citations omitted).

Finally, there are conflicts and issues of fact as to an email that Patt reportedly sent to Plaintiff at 10:50 a.m. on January 26. In the version that appears at ECF No. 42-11 at 15, Patt writes that Plaintiff is out on "*unapproved* leave" (emphasis added). An identical version of this email appears in records attached to Plaintiff's Opposition. ECF No. 45-2

at 65. However, in another version of this email that appears at ECF No. 45-2 at 67, the email is time stamped 12:51 p.m. and states, "At this point, you are out on an *approved* leave" (emphasis added). Everything else in this email is identical to the other two versions. Plaintiff refers to the latter version (i.e., ECF No. 45-2 at 67) in her Declaration (Emerick Decl. ¶ 10) and in her opposition (ECF No. 45 at 9). Neither party has clarified why there are two conflicting versions of this email in the record.

In sum, the Court finds genuine issues of material fact as to whether Defendant interfered with Plaintiff's ability to return to work. In addition, the circumstantial evidence creates an issue as to whether Plaintiff's exercise of her CFRA rights was a factor in terminating her. The Court therefore **DENIES** Defendant's motion for summary judgment on the interference claim.

### b. Retaliation Claim

In order to establish a prima facie case of retaliation under the CFRA, an employee must establish the following four elements: (1) the defendant was an employer covered by CFRA; (2) the plaintiff was an employee eligible to take CFRA leave; (3) the plaintiff exercised her right to take leave for a qualifying CFRA purpose; and (4) the plaintiff suffered an adverse employment action, such as termination, fine, or suspension, because of her exercise of her right to CFRA leave. *Dudley v. Dep't of Transp.*, 90 Cal. App. 4th 255, 256–57 (2001). If any employee presents a prima facie case of retaliation, the court then employs the three-stage *McDonnell Douglas* burden-shifting analysis to the employee's claim. *Moore v. Regents of Univ. of California*, 248 Cal. App. 4th 216, 234 (2016) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973)). The defendant may rebut the resulting presumption of discrimination by articulating a legitimate, non-discriminatory reason for its actions. *See Guz v. Bechtel Nat. Inc.,* 24 Cal. 4th 317, 355–56 (2000) (citations omitted). Once such a reason is articulated, the burden shifts to the plaintiff to demonstrate that the reason offered by the defendant is merely pretext for retaliation. *Moore*, 248 Cal. App. 4th at 235.

///

### i. Legitimate Reason

Defendant does not contest Plaintiff's ability to make out a prima facie case for a retaliation claim but argues that there is a legitimate and non-retaliatory reason for Plaintiff's termination (*i.e.*, Plaintiff's three consecutive No Call/No Show absences) and that Plaintiff cannot show that it is pretextual. Plaintiff counters that Defendant lacks a legitimate non-retaliatory reason for termination and that Defendant's argument that Plaintiff incurred three No Call/No Show absences is merely pretextual.

As discussed above, Defendant's claim that Plaintiff incurred three consecutive No Call/No Show absences raises several issues of triable and material facts. Therefore, Defendant has failed to "rebut the . . . presumption of discrimination by articulating a legitimate, non-discriminatory reason for its actions." *Alcala v. Best Buy Stores, LP*, 2012 WL 6138332, at *5 (C.D. Cal. Nov. 7, 2012)

Here, Defendant has failed to rebut the presumption of discrimination by establishing that there was a non-retaliatory and legitimate reason for terminating Plaintiff. Therefore, Defendant's motion for summary judgment on Plaintiff's retaliation claim is **DENIED**.

### ii. Pretext

Further, there are several issues of material fact with respect to the question of pretext. Pretext for retaliation "may be inferred from timing of employer's termination decision, by identity of person making decision, and by [the] terminated employee's job performance before termination." *Flait v. N. Am. Watch Corp.*, 3 Cal. App. 4th 467, 479 (1992). Plaintiff argues that the timing of her termination, being so close to the end of her medical leave, shows that the offered reason for termination is pretextual. Plaintiff also argues that Defendant had already decided to terminate her before she failed to appear on Monday, January 30, and that Defendant had a motive to terminate her, since other employees and managers were frustrated by her approved medical leave. SOF Response ¶¶ 18.1, 18.3. Defendant counters that Regus had not decided to terminate Plaintiff, but merely indicated their intent to follow the attendance policy in the event

17

they did not hear from Plaintiff, and that the only individual who expressed annoyance at Plaintiff's absence was not involved in the decision to terminate Plaintiff.

The difficulty of determining the existence of pretext speaks to the tendency of courts to deny summary judgment in similar cases: "Many employment cases present issues of intent [and] motive . . . [s]uch cases are rarely appropriate for disposition on summary judgment, however liberalized [summary judgment standards may] be." *Moore*, 248 Cal. App. 4th at 236. The issues of material fact that have been raised with respect to the question of pretext counsel against granting summary judgment.

## 2. Violation of Public Policy

Plaintiff alleges that she was terminated in violation of California's public policies, which protect the right to take medical or other leave. Defendant argues that since Plaintiff's claim shares the same factual and legal bases for her claims under the CFRA and those CFRA claims have failed, her claim for wrongful termination in violation of public policy must likewise fail.

California law recognizes a cause of action for an employee who is wrongfully terminated in violation of public policy. *Tameny v. Atlantic Richfield Co.*, 27 Cal. 3d 167, 170 (1980). "Discharge in violation of the CFRA has been held, as a matter of law, to constitute wrongful discharge in violation of public policy." *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1137 (9th Cir. 2003).

Plaintiff argues that since there are issues of fact with respect to her claim for violation of the CFRA, triable issues of fact also exist in her wrongful termination in violation of public policy claim. Since the Court has denied summary judgment as to the CFRA claims on the basis that there are several triable issues of fact, the Court accordingly **DENIES** the summary judgment motion with respect to Plaintiff's claims of violation of policy.

## 3. Section 17200

Plaintiff alleges breach of unfair competition law under California's Business & Professions Code §§ 17200 *et seq* ("Unfair Competition Law" or "UCL"). In order to

state a claim for a violation of UCL, the Plaintiff must allege that Defendant committed a business act that is either "fraudulent, unlawful, or unfair." *Vargas v. HSBC Bank USA, N.A.*, 2012 WL 3957994, at *8 (S.D. Cal. Sept. 10, 2012) (citing *Levine v. Blue Shield of Cal.*, 189 Cal.App.4th 1117, 1136 (2010)). The purpose of the law is "to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services." *Kasky v. Nike, Inc.,* 45 P.3d 243 (Cal. 2002). Each prong of Section 17200 describes a separate and distinct theory of liability. *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1127 (9th Cir. 2009). The unlawful prong incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law. *Chabner v. United of Omaha Life Ins. Co.,* 225 F.3d 1042, 1048 (9th Cir. 2000).

Defendant argues that the CFRA is the only potential legitimate basis for Plaintiff's claim under the UCL, and since Plaintiff's CFRA claims fail as a matter of law, the UCL claim must fail with them. The Court has found that there are several issues of triable material facts with respect to the CFRA claims and therefore, they do not fail as a matter of law. Accordingly, Defendant's motion for summary judgment with respect to the UCL claims is **DENIED**.

## CONCLUSION

In sum, Defendant's motion for summary judgment is **DENIED**.

**IT IS SO ORDERED.**

Dated: February 5, 2020

Hon. Gonzalo P. Curiel
United States District Judge